THOMAS M. MCINERNEY, CA Bar No. 162055
tmm@ogletree.com
SARAH ZENEWICZ, CA Bar No. 258068
sarah.zenewicz@ogletree.com
KEVIN HA, CA Bar No. 322252
kevin.ha@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
Steuart Tower, Suite 1300
One Market Plaza
San Francisco, CA  94105
Telephone:    415-442-4810
Facsimile:    415-442-4870

Attorneys for Defendant
MADISON INDUSTRIAL SERVICES TEAM, LTD.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK SICA on behalf of himself, and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MADISON INDUSTRIAL SERVICES TEAM, LIMITED PARTNERSHIP; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.<br><br>**DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT PURSUANT TO 28 U.S.C. §§ 1332, 1441, 1446, AND 1453**<br><br>[Concurrently filed with Civil Cover Sheet; Certification of Interested Parties and Corporate Disclosure Statement; Request for Judicial Notice; and Declaration of Mark Schneider]<br><br>Complaint Filed:  September 30, 2020 |

**TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, AND TO PLAINTIFF AND HIS COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** Defendant Madison Industrial Services Team, Ltd. ("Defendant") removes this action from the Superior Court of the State of California for the County of Alameda, to the United States District Court for the Northern District of California pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453. As discussed below, this Court has original jurisdiction over this matter pursuant to the Class Action Fairness Act ("CAFA").

**I.  PROCEDURAL BACKGROUND AND TIMELINESS OF REMOVAL**

1. On or about September 30, 2020, Plaintiff Frank Sica ("Plaintiff") filed his Class Action Complaint for Damages ("Complaint") in the Superior Court of the State of California, County of Alameda, entitled *Sica v. Madison Industrial Services Team, Limited Partnership*, which was assigned case number RG20076869 (the "State Court Action"). A true and correct copy of the Complaint is attached as **Exhibit A** to this Notice of Removal.

2. On October 26, 2020, Plaintiff served Defendant with a copy of the Complaint, as well as other documents filed in the State Court Action. A true and correct copy of the Civil Case Cover Sheet filed by Plaintiff is attached hereto as **Exhibit B**. A true and correct copy of the Summons is attached hereto as **Exhibit C**. A true and correct copy of the other documents served by Plaintiff with the Complaint and Summons is attached hereto as **Exhibit D**. On October 30, 2020, Plaintiff filed a Proof of Service of Summons, a true and correct copy of which is attached hereto as **Exhibit E**.

3. On September 14, 2020, Plaintiff filed a California Private Attorneys General Act of 2004 ("PAGA") notice with the California Labor & Workforce Development Agency. That letter includes additional factual allegations supporting Plaintiff's claims for unpaid minimum wage, unpaid meal period premiums, non-complaint wage statements, and final wages not timely paid. A true and correct copy of Plaintiff's September 14, 2020 PAGA letter is attached hereto as **Exhibit F**.

4. On November 24, 2020, Plaintiff served Defendant with a copy of the First Amended Class Action Complaint for Damages ("FAC"). The FAC alleges ten causes of action:

1  (1) Violation of California Business & Professions Code § 17200, *et seq.*; (2) Violation of
2  California Labor Code §§ 1194 and 1194.2 (Unpaid Minimum Wages and Liquidated Damages);
3  (3) Civil Penalties under PAGA for Unpaid Minimum Wages; (4) Violation of California Labor
4  Code §§ 226.7 and 512(a) (Unpaid Meal Period Premiums); (5) Civil Penalties under PAGA for
5  Unpaid Meal Period Premiums; (6) Violation of California Labor Code § 226(a) (Non-Compliant
6  Wage Statements); (7) Civil Penalties under PAGA for Non-Compliant Wage Statements; (8)
7  Violation of California Labor Code §§ 201 and 202 (Final Wages Not Timely Paid); (9) Civil
8  Penalties under PAGA for Final Wages Not Timely Paid; and (10) Civil Penalties under PAGA for
9  Failing to Timely Pay Wages under California Labor § 204(b).  A true and correct copy of the FAC
10 is attached hereto as **Exhibit G**.

11       5.     On November 24, 2020, Defendant filed an Answer to Plaintiff Frank Sica's Class
12 Action Complaint for Damages in Alameda Superior Court.  A true and correct copy of the answer
13 is attached hereto as **Exhibit H**.  Defendant will file a file-endorsed copy of the Answer to the
14 Complaint with this Court as soon as reasonably possible.

15       6.     On November 25, 2020, Defendant filed an Answer to Plaintiff Frank Sica's FAC in
16 Alameda Superior Court before filing this Notice of Removal.  A true and correct copy of the
17 answer to the FAC is attached hereto as **Exhibit I**.  Defendant will file a file-endorsed copy of the
18 Answer to the FAC with this Court as soon as reasonably possible.

19       7.     Plaintiff has not yet identified any of the fictitious "Doe" defendants identified in
20 the Complaint and the citizenship of "Doe" defendants is disregarded for the purposes of removal.
21 28 U.S.C. § 1441(a); *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

22       8.     A defendant in a civil action has thirty (30) days from the date it is served with a
23 summons and complaint in which to remove the action to federal court.  28 U.S.C. § 1446(b);
24 *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999).  As Defendant's
25 registered agent for service of process was served with the summons and Complaint on October 26,
26 2020, this Notice of Removal is timely.  28 U.S.C. § 1446(b), *see* Fed. R. Civ. P. 6(a)(1)(C);
27 *Fleming v. United Teachers Assocs. Ins. Co.*, 250 F. Supp. 2d 658, 661 (S.D. W.Va. 2003)
28 (removal petition was timely where 30th day after service fell on Thanksgiving and removal

petition was filed the following day); *Johnson v. Harper*, 66 F.R.D. 103 (E.D. Tenn. 1975) (removal was timely where 30th day after service fell on a Saturday and removal was filed the following Monday).

## II. JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT

9. This action is one over which this Court has original jurisdiction under CAFA and is one which may be removed by Defendant pursuant to 28 U.S.C. §§ 1441 and 1453, because the number of potential class members exceeds 100, the parties are citizens of different states, and the amount in controversy exceeds the aggregate value of $5,000,000. *See* 28 U.S.C. §§ 1332(d)(2) and (d)(6).[1]

### A. The Size of the Putative Class Exceeds 100 Members

10. In his Complaint, Plaintiff defines the proposed class as follows: "all hourly non-exempt on-site employees who performed work for MADISON at job sites located within the State of California at any time during the four-year period preceding the filing of this Complaint and up through the present and until compliance with the law." Ex. G, ¶ 16.

11. Defendant's employment records show that there are over 250 current and former employees of Defendant who fall within Plaintiff's proposed class. Declaration of Mark Schneider ("Schneider Decl."), ¶ 7.

12. Accordingly, the CAFA numerosity requirement is fulfilled because there are more than 100 class members implicated in Plaintiff's Complaint. 28 U.S.C. § 1332(d).

### B. The Diversity of Citizenship Requirement is Satisfied

13. The minimal diversity requirement of 28 U.S.C. § 1332(d) is met in this action because the Court need only find that there is diversity between one putative class member and one defendant. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B), 1453(a).

14. *Citizenship of Defendant.* Pursuant to 28 U.S.C. § 1332(d)(10), "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business

---

[1] Defendant is the only named defendant in this matter and, thus, there are no other defendants to consent to removal. Furthermore, an action may be removed by a single defendant under CAFA without the consent of the other defendants. *See* 28 U.S.C. § 1453(a).

1 and the State under whose laws it is organized." A company's headquarters is presumptively the 2 location of its "principal place of business . . . ." *Hertz v. Friend*, 559 U.S. 77, 78 (2010) ("[I]n 3 practice [a company's principal place of business] should normally be the place where the 4 corporation maintains its headquarters—provided that the headquarters is the actual center of 5 direction, control and coordination, *i.e.*, the 'nerve center' . . . .").

6   15.   At all times on or after the date this action was filed, Defendant has been a citizen of 7 the state of Texas. Defendant has its principal place of business in Pasadena, Texas, as that is the 8 location of its headquarters from which its officers direct, coordinate, and control its business 9 operations. Schneider Decl., ¶ 10. Defendant is a limited partnership organized under the laws of 10 the State of Texas. *Id.*; Request for Judicial Notice, Ex. A.

11   16.   <u>Citizenship of Plaintiff</u>. For diversity purposes, an individual is a "citizen" of the 12 state in which he is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 13 1983). An individual's domicile is the place he resides with the intention to remain or to which he 14 intends to return. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

15   17.   The Complaint alleges that "[Plaintiff] worked for Defendants as a pipefitter on a 16 project that took place in October 2019 at the Conoco Phillips refinery in Rodeo, California." Ex. 17 G at ¶ 4. The Complaint also alleges that he is a member of a California-based class, which is 18 defined as "all . . . employees . . . within the State of California…" Ex. G at ¶ 16. Thus, Plaintiff 19 is a citizen of the State of California and domiciled in California.

20   18.   Members of the proposed class, who by definition are or were employed in 21 California, are presumed to be primarily citizens of the State of California. *See, e.g.*, *Lew v. Moss*, 22 797 F.2d 747, 750 (9th Cir. 1986) ("place of employment" an important factor weighing in favor of 23 citizenship). Thus, even if Plaintiff were somehow a citizen of Texas (and there is no such 24 allegation in the Complaint or evidence that he is), there is no possible way that the hundreds of 25 putative class members, all of whom worked in California (Ex. G, ¶ 16), were also citizens of 26 Texas.

27   19.   Accordingly, the minimal diversity requirement of 28 U.S.C. 1332(d) is met in this 28 action because Defendant is a citizen of Texas while Plaintiff, a putative class member, is a citizen

of California.

C. <u>The Amount in Controversy Exceeds an Aggregate of $5,000,000</u>

20. Plaintiff has not alleged a specific amount in controversy in the Complaint. In order to remove a class action pursuant to CAFA, the amount in controversy must exceed $5,000,000, and it is the removing party's burden to establish, "by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum." *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013). To do so, the removing defendant must "produce underlying facts showing only that it is *more likely than not* that the amount in controversy exceeds $5,000,000.00, assuming the truth of the allegations plead in the Complaint." *Muniz v. Pilot Travel Ctrs. LLC*, 2007 WL 1302504, at *5 (E.D. Cal. May 1, 2007) (emphasis in original).

21. In considering the evidence submitted by the removing defendant, the Court must "look beyond the complaint to determine whether the putative class action meets the [amount in controversy] requirements" adding "the potential claims of the absent class members" and attorneys' fees. *Rodriguez*, 728 F.3d at 981 (citing *Standard Fire Ins. Co. v. Knowles*, 133 S.Ct. 1345 (2013)); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 705 (9th Cir. 2007). Furthermore, "[i]n considering whether the amount in controversy is clear from the face of the complaint, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Altamirano v. Shaw Indus., Inc.*, 2013 WL 2950600, at *4 (N.D. Cal. June 14, 2013) (citing *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008)); *see also Muniz*, 2007 WL 1302504, at *3.

22. While Defendant denies the validity of Plaintiff's claims and requests for relief, and does not concede in any way that the allegations in the Complaint are accurate, that Plaintiff's claims are amenable to classwide treatment, or that Plaintiff or the purported class are entitled to any of the requested relief, the allegations in the Complaint show it is more likely than not that the amount in controversy exceeds the jurisdictional minimum. *See Guglielmino*, 506 F.3d at 700.

23. In determining the amount in controversy to support its Notice of Removal, Defendant relies here on a conservative estimate of the amount in controversy based on damages

and attorneys' fees sought by Plaintiff as a result of the alleged: (1) failure to timely pay all wages owed upon termination; (2) unpaid meal premiums; (3) unpaid minimum wages and liquidated damages; and (4) failure to provide accurate wage statements.

1. <u>The Amount Placed in Controversy by Plaintiff's Waiting Time Penalty Claim Exceeds $4,000,000</u>

24. In his Eighth Cause of Action, Plaintiff alleges that Defendant "unfairly and unlawfully have had a policy and practice of violating Labor Code §§ 201 and 202 by failing to pay Plaintiff and the class all wages earned during their employment within the times specified by those sections." Ex. G, ¶ 86. Plaintiff alleges that, as a result, "Plaintiff and class members whose employment ended at any time [] during the applicable limitations period preceding the original filing of this Complaint and up through the present and until compliance with the law are entitled to 30 days' wages under Labor Code § 203, together with interest." Ex. G, ¶ 89.

25. Plaintiff alleged in his PAGA Notice, "aggrieved employees whose employment with Madison Industrial has ended still have not received their full minimum wages and overtime pay, all of which remain due and owing." Ex. F at 4.

26. Section 203 penalties "accrue not only on the days that the employee might have worked, but also on nonworkdays," for up to 30 days, and the accrual of these penalties "has nothing to do with the number of days an employee works during the month." *Mamika v. Barca*, 68 Cal. App. 4th 487, 492-93 (1998). As the "targeted wrong" addressed by Section 203 is "the delay in payment" of wages, that wrong "continues so long as payment is not made"; therefore, "[a] proper reading of section 203 mandates a penalty equivalent to the employee's daily wages for each day he or she remained unpaid up to a total of 30 days." *Id*. at 493.

27. Based on Defendant's records, the approximate number of putative class members who were terminated in the three years before the filing of the Complaint is 270, and the average hourly rate of pay for the putative class was $49.97. Schneider Decl., ¶¶ 6, 8. The putative class members were generally scheduled to work at least ten hours a day. Schneider Decl., ¶ 4. Plaintiff alleged in his PAGA Notice that he worked "10 or more hours a day." Ex. F at 1.

28. Defendant's calculation of the amount in controversy for Plaintiff's waiting time

penalty claim is **$4,047,570.00** (270 terminated class members x $49.97 average hourly rate x 10 hours per day x 30 days). The computation of the amount in controversy is based on conservative estimate that each one of the 270 terminated class members was owed but not paid at least some of their wages at termination and accrued 30 days of waiting time penalties based on those unpaid wages. This is a reasonable assumption because Plaintiff's section 203 claim is not premised only on the theory that Defendant failed to timely deliver final paychecks to terminated employees. Rather, Plaintiff contends that Defendant owes penalties at least in part as a result of its "policy and practice," including its purported failure to pay "all wages earned during their employment." Ex. G, ¶ 86. In light of the fact that, through his Complaint, Plaintiff is also seeking to recover alleged unpaid minimum wages allegedly owed, it is clear that Plaintiff's theory is that such alleged unpaid wages still have not been paid to Plaintiff and putative class members. Moreover, Plaintiff alleges in his PAGA Notice that the unpaid wages "remain due and owing" to the terminated employees. Ex. F at 4. It is therefore reasonable to calculate the amount in controversy for this claim based on a 30-day penalty calculated at each former employee's daily wage rate. *See Quintana v. Claire's Stores, Inc.*, 2013 WL 1736671, at *6 (N.D. Cal. Apr. 22, 2013) (finding that the defendants' waiting time penalties calculation was "supported by Plaintiffs' allegations" and was "a reasonable estimate of the potential value of the claims" where the complaint alleged that the defendants "'regularly required'" putative class members to work off-the-clock without compensation, and the defendants estimated that each putative class member "potentially suffered at least one violation that continues to be unpaid"); *Stevenson v. Dollar Tree Stores, Inc.*, 2011 WL 4928753, at *4 (E.D. Cal. Oct. 17, 2011) (finding it reasonable for the defendant to assume, in light of the allegations in the complaint that members of the putative class "'routinely'" missed meal periods, that "all members of the proposed class . . . would have missed a meal period as described in the complaint at least once and were thus entitled to the waiting time penalty").

        2.    <u>The Amount Placed in Controversy by Plaintiff's Meal Break Claims Exceeds $100,000.</u>

      29.    In his Fourth Cause of Action, Plaintiff alleges that "when Plaintiff and members of the proposed class worked more than 10 hours in a single day, Defendants had a policy and

practice of refusing and/or failing to provide employees with all of the duty-free meal periods that are mandated . . ." Ex. G, ¶ 62.

30. Under California law, employees who miss meal periods are entitled to one hour of premium pay for each day that a meal period is missed. *See Van v. Language Line Servs., Inc.*, 2016 WL 3143951, at *17 (N.D. Cal. June 6, 2016), aff'd in part, 733 F. App'x 349 (9th Cir. 2018). Meal and rest period claims are properly considered in determining the amount in controversy. *See, e.g., Muniz*, 2007 WL 1302504, at *4; *Helm v. Alderwoods Grp., Inc.*, 2008 WL 2002511, at *8 (N.D. Cal. May 7, 2008). Plaintiff also alleges that the failure to pay meal and rest break premiums constitutes unfair competition within the meaning of the UCL (Ex. G, ¶ 41) and therefore applicable statute of limitations for the meal break claim is four years. Bus. & Prof. Code § 17208 ("Any action to enforce any cause of action pursuant to this chapter shall be commenced within four years after the cause of action accrued"); *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 178-79 (2000) (the four-year statute of limitations applies to any UCL claim, notwithstanding that the underlying claims have shorter statutes of limitation).

31. Based on Defendant's records, the minimum number of putative class members is 283, and they worked approximately 2,074 workweeks. Schneider Decl., ¶ 7. The average hourly rate of the putative class members was $49.97. *Id*. at ¶ 6. As set forth above, Defendant's California employees were generally scheduled to work at least 10 hours per day for 4 to 6 days per workweek. *Id.*, ¶ 4. Plaintiff alleges that he was scheduled to work at least 10 hours per day and that he and others "sometimes worked more than 12 hours in a day." Ex. G ¶ 12.

32. Defendant's calculation of the amount in controversy for Plaintiff's meal break claims is **$104,647.18** ($49.97 meal period penalty x 2,074 workweeks). The computation of the amount in controversy is based on conservative estimates that the 283 putative class members worked at least 2,074 workweeks between September 30, 2016, and the present, that the average putative class member earned an hourly rate of $49.97, and that each putative class member incurred one meal break penalty for every week of work. Schneider Decl., ¶¶ 6, 7. The foregoing calculation assumes a violation rate of one missed second meal break per workweek. One violation per workweek is generally accepted as a reasonable conservative assumption when calculating the

amount in controversy for CAFA purposes and where, as here, a plaintiff has alleged a "policy and practice" of failing to provide meal breaks and reasonable given that employees worked at least 10 hours. *See, e.g.*, *Chavez v. Pratt (Robert Mann Packaging), LLC*, 2019 WL 1501576, at *3 (N.D. Cal. Apr. 5, 2019) (finding that a 20% violation rate for meal and rest period was reasonable where the plaintiff alleged a "pattern or practice" of violations); *Danielsson v. Blood Centers of Pac.*, 2019 WL 7290476, at *6 ("Defendant's first assumption—a 20% violation rate for meal and rest breaks during the putative class period—is reasonable given the allegations of a 'pattern and practice' of such violations."); *Mendoza v. Savage Servs. Corp.*, 2019 WL 1260629, at *2 (C.D. Cal. Mar. 19, 2019) (holding in a case involving the same Plaintiff's counsel that "courts in [the Central District] routinely apply a 20% violation rate—that is, one missed mean and rest period per work week—for meal and rest period premiums"); *Mortley v. Express Pipe & Supply Co.*, 2018 WL 708115, at *4 (C.D. Cal. Feb. 5, 2018) (finding defendants assumption that class members missed two meal periods and two rest periods each per week based on allegations of "a company-wide policy and/or practice of understaffing" was reasonable); *Stanley v. Distribution Alts., Inc.*, 2017 WL 6209822, at *2 (C.D. Cal. Dec. 7, 2017) (accepting assumed violation rates of "three missed rest breaks, and three missed meal breaks per week" where the complaint offered no guidance as to the frequency of the alleged violations); *Alvarez v. Office Depot, Inc.*, 2017 WL 5952181, at *3 (C.D. Cal. Nov. 30, 2017) (finding 60% violation rate reasonable where the complaint "alleges a uniform practice of meal and rest period violations."); *Francisco v. Emeritus Corp.*, 2017 WL 2541401, at *6 (C.D. Cal. June 12, 2017) (finding defendants' estimation of one violation per work week for both meal and rest breaks reasonable and conservative because plaintiff alleged violations occurred as "a pattern and practice"); *Byrd v. Masonite Corp.*, 2016 WL 2593912, at *5 (C.D. Cal. May 5, 2016) (court found defendant's assumption that each putative class member missed one meal break and one rest period per workweek based on policy and practice allegations reasonable).

   3. <u>The Amount Placed in Controversy by Plaintiff's Unpaid Minimum Wage Claim Exceeds $100,000</u>

  33. In their Second Cause of Action, Plaintiff alleges that "Defendants had a policy and

practice of failing to pay Plaintiff and other putative class members for certain compensable pre-shift and post-shift time…" Ex. G, ¶ 49.  He seeks to recover the unpaid minimum wage, "as well as liquidated damages…" Ex. G, ¶ 50.  Plaintiff alleges that the failure to pay minimum wages is part of a "policy and practice."  Ex. G, ¶¶ 7, 11, 49.

34.     In his PAGA Notice, Plaintiff alleges that he had 30 to 45 minutes of unpaid pre-shift work each workday.  Ex. F at 2.  He also alleges that he had 5 to 10 minutes of unpaid time after the end of his shift.  *Id*. at 3.  Plaintiff alleges that this unpaid time was required for all on site employees:  "Madison Industrial requires employees to take provided transportation from a designated location inside the refinery gate to the lunch tent before the beginning of the shift, and then to take provided transportation against at the end of the day from the lunch tent back to the designated location inside the refinery gate[.]  That travel time is not paid." *Id.* at 2.

35.     Labor Code section 1194(a) provides:  "Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage . . . is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage . . . , including interest thereon, reasonable attorney's fees, and costs of suit."  Labor Code section 1194.2 provides that in any action "to recover wages because of the payment of a wage less than the minimum wage . . . an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid[.]"

36.     Plaintiff also alleges that the failure to pay minimum wages constitutes unfair competition within the meaning of the UCL (Ex. G, ¶ 41) and therefore applicable statute of limitations for the minimum wage claim is four years.  Bus. & Prof. Code § 17208.

37.     Based on Defendant's records, the minimum number of putative class members is 283, and they worked approximately 2,074 workweeks since March 2019.  Schneider Decl., ¶ 7.  During 2019, the minimum wage rate in California was $12.00.

38.     Defendant's conservative calculation of the amount in controversy for Plaintiff's unpaid minimum wage claim is **$117,247.24**, which includes $58,623.62 in unpaid minimum wages ($12.00 x 35 minutes per day x 4 days per workweek x 2,074) and $58,623.62 in liquidated damages.  This is a reasonable estimate given Plaintiff's allegations that "Defendant had a policy

and practice of failing to pay any wages whatsoever" for certain pre and post-shift activities which Plaintiff's estimate that it took a minimum of 35 minutes per day (Ex. F at 2), and that California non-exempt employees work at least 4 days per workweek, if not more. Schneider Decl., ¶ 4. *See, e.g., Vasquez v. Randstad US, L.P.*, 2018 WL 327451, at *4 (N.D. Cal. Jan. 9, 2018) (finding defendants' assumption of 2.5 hours per employee per week was reasonable for Minimum Wage claim damages calculation where plaintiff alleged that defendants' had a "policy and practice" of requiring them to complete certain tasks on a strict schedule before allowing employees to take a meal break that was not always provided).

### 4. The Amount Placed in Controversy by the Wage Statement Claim Exceeds $160,000

39. In his Sixth Cause of Action, Plaintiff alleges that "Defendants violated Labor Code § 226 through their practice of failing to provide their employees … with complete and accurate itemized wage statements. Among other things, the wage statements provided by Defendants violated Labor Code § 226(a) by failing to state accurately the gross wages earned and the actual hours worked by each employee." Ex. G, ¶ 74.

40. Plaintiff asserts that as a result of Defendant's alleged failure to provide wage statements in compliance with California law, they and the putative class members are due the greater of their actual damages caused by Defendant's failure to comply with California Labor Code section 226(a), or an aggregate penalty not exceeding four thousand dollars per employee. Ex. G, ¶ 75.

41. The statute of limitations for a claim for wage statement penalties under Labor Code Section 226(e) is one year. Cal. Civ. Proc. Code § 340(a).

42. Defendant's calculation of the amount in controversy for Plaintiff's claim for non-compliant wage statements is **$165,400.00**. The computation of the amount in controversy is based on conservative estimates that Defendant issued at least 1,793 wage statements to 278 putative class members between September 30, 2019, and the present, and that there was one violation for each putative class member per pay period for which the employee was issued a paycheck during that statute of limitations period, that the penalty for the first wage statement violation for each

putative class member is $50, that the penalty for subsequent wage statement violations for each class member is $100, and that the aggregate penalty for each class putative class member does not exceed $4,000.  Schneider Decl., ¶ 9.

43. An estimate of one wage statement violation for every pay period is reasonable, as the Complaint alleges that "Defendants violated Labor Code § 226 through their practice of failing to provide their employees … with complete and accurate itemized wage statements."  Ex. G, ¶ 74.

44. In *Altamirano v. Shaw Industries, Inc.*, 2013 WL 2950600, *11 (N.D. Cal. June 14, 2013), the district court held that it was "reasonable to assume that each putative class member suffered at least one violation during any given pay period, resulting in an inaccurate wage statement," in light of the plaintiff's allegations "about the pervasiveness of the policies that are the subject of the first three causes of actions" for failure to pay minimum wages, failure to pay overtime wages, and failure to provide meal periods.  Moreover, given Plaintiff's allegations that the putative class members were not properly compensated for all hours worked, or meal and rest break premiums as a "policy and practice," it is reasonable to assume that Plaintiff's claim that each putative class members suffered at least one wage statement violation during any given pay period.  Thus, "it is reasonable to assume a 100% violation rate in calculating the amount in controversy for this cause of action."  *Id*.

5. Attorneys' Fees

45. Plaintiff seeks to recover attorneys' fees on behalf of the putative class.  Ex. G, ¶¶ 8, 47, 51, 57, 65, 72, 76, 83, 96, 103; Prayer for Relief ¶ xiii.  Defendant denies that Plaintiff is entitled to recovery any attorneys' fees; however, attorneys' fees may properly be included in determining the amount in controversy.  *See, e.g.*, *Lowdermilk v. US Bank Nat'l Assoc.*, 479 F.3d 994, 1000 (9th Cir. 2007) (holding that statutorily-mandated attorneys' fees are properly included in the amount in controversy for CAFA jurisdiction purposes).

46. For class actions, 25% of the common fund is a benchmark rate for attorney's fees in this Circuit.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) ("This circuit has established 25% of the common fund as a benchmark award for attorney fees"); *see also Giannini v. Northwestern Mut. Life Ins. Co.*, 2012 WL 1535196, at *4 (N.D. Cal. 2012) (holding that

defendant's inclusion of attorneys' fees to satisfy amount in controversy was reasonable where defendants "base this amount by multiplying by twenty-five percent the sum of the amounts placed in controversy by the four claims" asserted by plaintiff.); *Johnson v. Gen. Mills, Inc.*, 2013 WL 3213832, at *6 (C.D. Cal. June 17, 2013) ("The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark."); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (noting that 25% is benchmark and "usual" range of awards is 20-30%).

47. Despite the common 25% benchmark, Defendant conservatively uses a 20% benchmark here. Twenty percent of the total potential award for just the limited claims outlined above is **$886,970.89**.

48. That at least attorneys' fees of at least $886,970.89 are in controversy is confirmed by crosschecking that award by Plaintiff's counsel's claimed hourly rates in similar matters and the minimum hours it would take to litigate a wage and hour class action through trial.

49. Plaintiff's counsel of record from Keller Grover LLP has claimed attorneys' fee rates of at least $650 per hour in 2019. Based on a $650 per hour rate, it would only take 1,365 billable hours to reach at least $886,970.89 in fees in this action. Litigating a wage and hour class action through trial would easily exceed 1,500 hours. *Ridgeway v. Wal-Mart Stores Inc.*, 269 F. Supp. 3d 975, 1003 (N.D. Cal. 2017) (granting a total of $15,200,002.90 in attorneys' fees based on a total of 10,595.8 hours at rates ranging from $300 to $900 per hours following a 16-day class action trial); *Ibarra v. Wells Fargo Bank, N.A.*, 2018 WL 5276295, at *7 (C.D. Cal. Sept. 28, 2018) (awarded $1,967,253.76 in attorneys' fees to the plaintiffs following summary judgment in their favor where class counsel had spent 1,805.55 hours litigating at rates ranging from $325 to $775); *In re Taco Bell Wage and Hour Actions*, 222 F. Supp. 3d 813, 847 (E.D. Cal. 2016) (awarding $1,156,821.12 in fees following trial based on 4,016.74 hours billed and a blended rate of only $288 per hour).

### 6. Summary of the Amount Placed In Controversy

50. As described above, a reasonable and conservative estimate of the amount placed in controversy by Plaintiff's claims for waiting time penalties, meal break premiums, unpaid

minimum wages, and wage statement penalties exceeds $5,000,000.

| Claim | Amount in Controversy |
|---|---|
| Waiting Time Penalty Claim | $4,047,570.00 |
| Meal Break Claim | $104,637.18 |
| Unpaid Minimum Wage Claim | $117,247.24 |
| Wage Statement Claim | $165,400.00 |
| Attorneys' Fees | $886,970.89 |
| **Total** | **$5,321,825.31** |

51. Consequently, the amount placed in controversy by Plaintiff's claims exceeds the $5,000,000 jurisdictional threshold of 28 U.S.C. § 1332(d).

**III.   THE PROCEDURAL REQUIREMENTS OF 28 U.S.C. § 1146 ARE SATISFIED**

52. In accordance with 28 U.S.C. §1446(a), this Notice of Removal is filed in the District in which the action is pending. The Alameda County Superior Court is located within the Northern District of California. Therefore, venue is proper in this Court because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

53. In accordance with 28 U.S.C. §1446(a), copies of all process, pleadings, and orders served upon Defendant are attached as Exhibits to this Notice.

54. In accordance with 28 U.S.C. §1446(d), a copy of this Notice is being served upon counsel for Plaintiff, and a notice will be filed with the Clerk of the Superior Court of California for the County of Alameda. Notice of compliance shall be filed promptly afterwards with this Court.

55. As required by Local Rule 3-15 and Federal Rule of Civil Procedure 7.1, Defendant concurrently filed its Certificate of Interested Parties and Corporate Disclosure Statement.

WHEREFORE, Defendant removes the above-captioned action to the United States District Court for the Northern District of California.

| | | |
|---|---|---|
| DATED: November 25, 2020 | | OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C. |
| | By: | /s/ Thomas M. McInerney |
| | | THOMAS M. MCINERNEY |
| | | SARAH ZENEWICZ |
| | | KEVIN HA |
| | | Attorneys for Defendant |
| | | MADISON INDUSTRIAL SERVICES TEAM, LTD. |

45059206.1

15         Case No.
DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT
PURSUANT TO 28 U.S.C. §§ 1332, 1441, 1446, AND 1453