UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK SICA,<br><br>    Plaintiff,<br><br>v.<br><br>MADISON INDUSTRIAL SERVICES TEAM, LIMITED PARTNERSHIP,<br><br>    Defendant. | Case No. 4:20-cv-08347-KAW<br><br>**ORDER GRANTING FINAL APPROVAL; ORDER GRANTING MOTION FOR ATTORNEYS' FEES**<br><br>Re: Dkt. Nos. 41, 44 |

On September 30, 2020, Plaintiff Frank Sica filed a putative class action against Defendant Madison Industrial Services Team, Ltd. Partnership alleging violations of California labor laws. The parties settled and, on March 9, 2022, the Court granted preliminarily approval.

On May 17, 2022, Plaintiff filed a motion for approval of attorneys' fees and costs, incentive award, and settlement administration costs. (Pl.'s Fees Mot., Dkt. No. 41.) On June 29, 2022, Plaintiff filed a motion for final approval of the settlement. (Pl.'s Mot., Dkt. No. 44.)

On August 4, 2022, the Court held a hearing, and, upon consideration of the parties' filings and the arguments presented, for the reasons set forth below, Plaintiff's motion for final approval is GRANTED.

## I.    BACKGROUND

### A.    Factual Background

On September 30, 2020, Plaintiff Frank Sica filed a putative class action against Defendant Madison Industrial Services Team, Ltd. Partnership alleging that Defendant failed to pay at least the minimum wage for all pre-shift and post-shift time worked, failed to provide timely, off-duty 30-minute meal periods, failed to provide accurate, itemized wage statements, and failed to pay all wages due upon termination in violation of California Business & Professions Code §§ 17200, et

seq., California Labor Code §§ 201-203, 226, 226.7, 510, 512, 1194, 1194.2, 1197 and 1197.1, and Wage Order 16. Plaintiff also alleges related representative PAGA claims. The case was removed to federal court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d).

Plaintiff worked for Defendant as an hourly-paid pipefitter on a project that took place in October 2019 at the Conoco Phillips refinery in Rodeo, California. (First Am. Compl., "FAC," Dkt. No. 1-7 ¶¶ 4, 10.) Plaintiff alleges that he worked six days per week, and that he typically worked 10 or more hours per day. (FAC ¶ 10.)

On November 19, 2020, Plaintiff filed the first amended complaint. The parties settled the lawsuit, and, on March 9, 2022, the Court preliminarily approved the proposed settlement and directed that notice be sent to the class members. (Am. Preliminary Approval Order, Dkt. No. 39.)

On May 17, 2022, Plaintiff filed a motion for attorneys' fees and costs, incentive award, and settlement administration costs. (Pl.'s Fees Mot., Dkt. No. 41.) Defendant filed a statement of non-opposition. (Dkt. No. 42.) On June 27, 2022, Defendant field a notice of CAFA Notice Completion, such that the CAFA notice period concluded on August 2, 2022. (Dkt. No. 43.) On June 29, 2022, Plaintiff filed the motion for final approval. (Pl.'s Mot., Dkt. No. 48.)

### B. Settlement Agreement

The settlement agreement ("Settlement") defines the Class Members as
> All current and former hourly on-site employees who worked for Defendant in California during the Class Period. An individual Class Member also may be an Aggrieved Employee if he or she falls within the "Aggrieved Employee" definition.

(Settlement Agreement, Decl. of Eric A. Grover ISO of Mot. for Attorneys' Fees, "Grover Fees Decl.," Dkt. No. 41-1, Ex. A at § I.H.) The Class Period was from September 30, 2016 through September 30, 2021. (Settlement Agreement § I.I.) The putative class has 377 members. (Grover Fees Decl. ¶ 25.)

Under the terms of the Settlement, Defendant agrees to pay a "Maximum Settlement Amount" of $650,000 plus the employer's share of the payroll taxes. (Settlement Agreement § I.V.) Of the Maximum Settlement Amount, Plaintiff's counsel seeks an attorney's fee award of 30%, or $195,000, costs not to exceed $17,500, and settlement administration costs of $7,000. (Settlement Agreement § I.W.) The Maximum Settlement Amount also includes $20,000 in

penalties under California's Private Attorneys General Act ("PAGA"), of which $15,000 shall be paid to the California Labor and Workforce Development Agency ("LWDA") and $5,000 will be part of the Net Settlement Amount for distribution to participating class members. (Settlement Agreement § III.M.5.) This leaves a Net Settlement Amount of $403,000. (Settlement Agreement § I.W.)

Settlement payments are calculated by calculating the total number of Qualified Shifts for all Class Members. (Settlement Agreement § III.M.2.a.1.) The number of shifts for each Class Member will then be divided by the total number of Qualified Shifts for all Class Members to obtain each Class Member's "Payment Ratio." *Id.* Each Payment Ratio will then be multiplied by the Net Settlement Amount to calculate that Class Member's payment, except that no gross individual payment will be less than $25. *Id.*

> The claims being released by the Settlement are limited to
> all claims against the Released Parties arising between September 30, 2016 and September 30, 2021, inclusive, under state, federal, or local law, whether statutory, arising out of the claims expressly pleaded in the operative First Amended Complaint on file in the Action (i.e., Labor Code §§ 201, 202, 203, 204b, 226, 226.3, 226.7, 510, 512, 1194, 1194.2, 1197.1, 1198, and 1199, and Business & Professions Code §§ 17200, et seq. claims based on alleged violations of these Labor Code provisions) and all other claims, such as those under the California Labor Code, Wage Orders, regulations, and/or other provisions of law, that could have been pleaded based on the facts pleaded in the First Amended Complaint, together with interest, fees, and costs related to those claims. The Release Period for the Released Claims shall be the same as the Class Period, i.e., the time period from and including September 30, 2016 through September 30, 2021.

(Settlement Agreement § I.LL.) No claim forms were necessary for any Class Member to participate in the settlement, but any Class Member could opt-out. (Settlement Agreement §§ III.K.7, III.M.2.a.) On average, each Class Member will receive approximately a payment of $1,069.36. (Suppl. Decl. of Evelin Reyes, "Suppl. Reyes Decl.," Dkt. No. 44-3 ¶ 10.) The highest individual settlement payment to be paid will be approximately $5,133.65. *Id.* Any remaining, unclaimed funds will be paid to Legal Aid at Work, as the designated *cy pres* beneficiary. (Settlement Agreement § III.M.2.e.)

### C. Notice and Administration

On April 13, 2022, Simpluris, Inc. mailed the class notice to the class of 377 individuals

utilizing the data provided by Defendant. (Decl. of Evelin Reyes, "Reyes Decl.," Dkt. No. 41-4 ¶¶ 7, 9.) Of those, 24 notices were returned as undeliverable. (Reyes Decl. ¶ 10.) Out of these, 17 were mailed to updated addresses after performing a skip-trace. *Id*. As of the date of the filing of this motion, seven Notice Packets are considered undeliverable, because an updated address could not be obtained. *Id.*

The deadline for Class Members to submit their requests for exclusion ("opt-outs") was May 31, 2022. (Reyes Decl. ¶ 11.) Of the delivered notices, no opt-outs were received by the response deadline. *Id.* No objections were submitted or filed, and there are no outstanding disputes. *Id.* at ¶¶ 12-13.

### D. CAFA Notice

Pursuant to the Class Action Fairness Act of 2005 ("CAFA"), Defendant sent notices of the proposed settlement on May 4, 2022, via certified mail to certain government officials in the States of California, Alabama, Arizona, Arkansas, Colorado, Connecticut, Florida, Georgia, Illinois, Kentucky, Louisiana, Michigan, Minnesota, Mississippi, Missouri, Montana, Nevada, Ohio, Oklahoma, Pennsylvania, South Carolina, South Dakota, Tennessee, Texas, Utah, Washington, and Wisconsin, as well as to the U.S. Attorney General as required by CAFA. (Dkt. No. 43 at 2.) CAFA's 90-day notice period expired on August 2, 2022. *See id.*

## II.   LEGAL STANDARD

In deciding whether a settlement agreement is fair, adequate, and reasonable to all concerned, the Court considers the following factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

The Ninth Circuit also counsels that while "strong judicial policy favors settlements, the settlement may not be the product of collusion among the negotiating parties." *Churchill Vill., LLC*, 361 F.3d at 576 (internal quotation and modification omitted). Further, when a settlement

4

agreement is negotiated prior to formal class certification, the court must be particularly vigilant for signs of collusion, as "there is an even greater potential for a breach of fiduciary duty owed the class during settlement." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). Such signs include: (1) counsel receiving a disproportionate distribution of the settlement, or where a class receives no monetary distribution, but class counsel is amply rewarded; (2) where the parties negotiate a "clear sailing" arrangement for the payment of attorney's fees separate and apart from class funds; and (3) where there is a reversion of fees to the defendant. *Id.* at 947.

## III. DISCUSSION

### A. Final Approval

The Court finds that the *Churchill* factors support final approval of the Settlement.

First, Plaintiff's case presented several risks. For example, Plaintiff ran the risk of not certifying the class for the claims alleged, and also risked the that the meal breaks and PAGA claims would be barred due to the existence of what Defendant claims is a valid collective bargaining agreement. (Pl.'s Mot. at 12-13.) Thus, the Court finds that the first *Churchill* factor favors final approval.

Second, in the absence of settlement, this case would likely be subject to significant further litigation. Plaintiff would still have to seek class certification, and disputes exist as to the merits of the case. The Court concludes that the second *Churchill* factor favors final approval.

Third, as discussed above, Plaintiff faced a risk that he would not be able to obtain and maintain class certification. (Pl.'s Mot. at 12-13.) Furthermore, the existence of the allegedly valid collective bargaining agreements may statutorily bar the claim for missed meal and rest periods. *Id.* at 11-12. This factor favors final approval.

Fourth, the amount offered by the Settlement is acceptable, as the Gross Settlement Amount is $650,000 plus Defendant's share of payroll taxes. (Pl.'s Mot. at 13.) The settlement provides a cash settlement payable in one payment and is enhanced by the lack of non-cash benefits to the settlement such as paid time off or coupons. (Settlement Agreement §§ I.V, III.A., III.M.) Thus, the Court finds that this factor favors final approval.

Fifth, it appears Plaintiff has engaged in sufficient investigation in this case. Class

1  Counsel has interviewed Plaintiff, reviewed documents provided by Plaintiff and Defendant,
2  engaged in motion practice, analyzed the legal positions taken by Defendants, exchanged
3  information through discovery, and performed a damages analysis. (Grover Fees Decl. ¶¶ 10-14.)
4  The Court concludes that the discovery conducted was adequate to allow the parties to make a
5  fully informed decision on settlement. Thus, this factor favors final approval.

6  Sixth, Class Counsel attests that the settlement is fair and reasonable. ((Decl. of Eric A.
7  Grover ISO Mot. for Final Approval, "Final Grover Decl.," Dkt. No. 44-1 ¶¶ 8-9.) Class Counsel
8  is experienced in this area, as the primary attorneys in this case have significant experience in
9  employment matters. (Grover Fees Decl. ¶¶ 2-4; Bernstein Decl. ¶ 2, Ex. 1.) Class Counsel's
10 experience and support for the Settlement favors final approval.

11 Seventh, notice of the settlement was provided to the LWDA, as well as the Class Action
12 Fairness Act ("CAFA") notice to all applicable state officials. (*See* Notice of CAFA Notice
13 Completion, Dkt. No. 43; Decl. of Robert Spenser ISO Mot. for Attorneys' Fees, Dkt. No. 41-5 ¶
14 2; Decl. of Robert Spencer ISO Final Approval, Dkt. No. 44-2 ¶ 2.) At the hearing, the parties
15 informed the Court that no government entity has lodged an objection to the settlement. The
16 Court finds that this *Churchill* factor favors final approval.

17 Finally, the reaction of the class members to the proposed settlement has been positive.
18 Per the settlement administrator, the class list included 377 individuals. (Reyes Decl. ¶¶ 7, 9.)
19 Only seven notices were deemed undeliverable, as no current address was found even after skip
20 tracing was performed. *Id.* at ¶ 10. No objections were filed with the Court, no opt-outs were
21 received, and there were no disputes of work weeks from Class Members. *Id.* at ¶¶ 11-13. As
22 there have been no opt-outs and no individuals have objected to the Settlement terms, this last
23 *Churchill* factor favors final approval.

24 Overall, the *Churchill* factors favor approval of the settlement. Additionally, the Court
25 finds that the *Bluetooth* factors are satisfied, such that there is no evidence of collusion.
26 Specifically, Class Counsel is not receiving a disproportionate distribution of the settlement, there
27 is no "clear sailing" arrangement, and none of the Settlement Amount reverts back to Defendants.
28 Thus, having reviewed both the *Churchill* and *Bluetooth* factors, the Court finds that the

6

1  Settlement is fair, adequate, and reasonable. Accordingly, the Court GRANTS Plaintiff's motion
2  for final approval.[1]

### B. Sufficiency of Notice and Administrator's Costs

Simpluris, Inc. provided notice to the members of the class in the form that the Court approved previously. The notice met the legal prerequisites: it was the best notice practicable, satisfied the notice requirements of Rule 23, adequately advised class members of their rights under the settlement agreement, met the requirements of due process, and complied with the Court's order regarding court notice. The form of notice fairly, plainly, accurately, and reasonably provided class members with all required information, including (among other things): (1) a summary of the lawsuit and claims asserted; (2) a clear definition of the class; (3) a description of the material terms of the settlement, including the estimated payment; (4) a disclosure of the release of the claims; (5) an explanation of class members' opt-out rights, a date by which they must opt out, and information about how to do so; (6) the date and location of the final fairness hearing; and (7) the identity of class counsel and the provisions for attorney's fees and costs.

In the Settlement Agreement, Simpluris agreed to a payment of not more than $7,000.00 to perform all duties required to administer the settlement. (Settlement Agreement § III.M.6.) In granting preliminary approval, the Court required the creation of a settlement website. (Am. Preliminary Approval Order at 2.) The addition of the settlement website increased the cost of administration to $9,000.00. (Reyes Decl. ¶ 17; Suppl. Decl. of Evelin Reyes, Dkt. No. 44-3 ¶ 11, Ex. 1.) Thus, the Court approves Simpluris's costs of $9,000.00, which will be paid out of the Maximum Settlement Amount.

### C. Attorneys' Fees

"[T]he court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The Ninth Circuit has found, however, that courts still "have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re*

---

[1] The parties have also selected the Legal Aid at Work as the *cy pres* beneficiary. (Pl.'s Mot. at 7.) The Court finds that the Legal Aid at Work is an appropriate *cy pres* beneficiary.

7

*Bluetooth*, 654 F.3d at 941. Where a settlement, such as this one, "produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *Id.* at 942. Under the percentage method, "courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award . . . ." *Id.* Court may diverge from the benchmark based on factors that include "the results obtained, risk undertaken by counsel, complexity of the issues, length of the professional relationship, the market rate, and awards in similar cases." *Morales v. Stevco*, Inc., No. CIV-F-09-0704-AWI-JLT, 2013 WL 1222058, at *2 (E.D. Cal. Mar. 25, 2013); *Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (affirming 33% fee award); *In re Pac. Enter. Secs. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995).

Here, Class Counsel seeks 30% of the common fund, or $195,000. (Pl.'s Mot. at 9; Pl.'s Fees Mot. at 10.) If the court applies the percentage method, then it typically calculates the lodestar as a "crosscheck to assess the reasonableness of the percentage award." *See, e.g., Weeks v. Kellogg Co.,* No. CV-09-8102-MMM-RZx, 2013 WL 6531177, at *25 (C.D. Cal. Nov. 23, 2013); *see also Serrano v. Priest*, 20 Cal. 3d 25, 48–49 (1977); *Fed-Mart Corp. v. Pell Enters.*, *Inc.*, 111 Cal. App. 3d 215, 226–27 (1980). "The lodestar . . . is produced by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate." *Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 26 (2000). Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative "multiplier to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented." *Id.*; *accord Laffitte v. Robart Half Internet, Inc.*, 1 Cal. 5th 480, 503–06 (2016) (under California law, "the percentage method to calculate [attorney's] fees in a common fund case" is appropriate and the trial court has "discretion to conduct a lodestar cross-check on a percentage fee").

Based on counsel's submissions, the fee award is appropriate as a percentage of the common fund and is supported by a lodestar cross-check, given the results obtained, the case itself, the lack of objections to the settlement, and counsel's litigating the case on a contingency basis. *Cf. e.g., Bellinghausen*, 306 F.R.D. at 259–65 (N.D. Cal. Mar. 20, 2015) (approving attorney's fees equal to the benchmark 25 percent of the common fund); *Burden v. SelectQuote*

8

*Ins. Servs.*, No. C 10-5966-LB, 2013 WL 3988771, at *4–5 (N.D. Cal. Aug. 2, 2013) (awarding 33 percent of the settlement fund as attorney's fees "given the extensive litigation in the case[,] [] the successful results achieved[,]" and the contingency risk); *Villalpando v. Excel Direct Inc.*, Nos. 12-cv-04137-JCS, 13-cv-03091-JCS, 2016 WL 7740854, at *2 (N.D. Cal. Dec. 12, 2016) (awarded one-third of the settlement fund as reasonable attorney's fees because of "the contingent risk, [c]ounsel's documented lodestar, the complex and protracted nature of the case, and strong result for the case").

As to the lodestar cross-check, the billing rates are normal and customary (and thus reasonable) for lawyers of comparable experience doing similar work.[2] *Cuviello v. Feld Entm't, Inc.*, No. 13-cv-04951-BLF, 2015 WL 154197, at *2–3 (N.D. Cal. Jan. 12, 2015) ("court has broad discretion in setting the reasonable hourly rates used in the lodestar calculation"); *Ketchum v. Moses,* 24 Cal. 4th 1122, 1132 (2001) (court can rely on its own experience); *accord Open Source Sec. v. Perens*, 803 F. App'x 73, 77 (9th Cir. 2020). Counsel provided billing records justifying the hours worked in the case, which was more than the percentage award sought. *See Vizcaino*, 290 F.3d at 1051 n.6 ("Multiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied").

Thus, applying the percentage method, as cross-checked by the lodestar method, the Court finds that the attorney's fees sought by Class Counsel is reasonable. The Court, therefore, GRANTS Plaintiff's request for an award of attorney's fees in the amount of $195,000.

**D. Attorneys' Costs**

Plaintiff seeks $15,352.54 in costs, which is less than the $17,500.00 allotted in the Settlement Agreement. (Pl.'s Fees Mot. at 14; Settlement Agreement at § 111.M.4.a; Grover Fees Decl. ¶¶ 75-78, Ex. F; Bernstein Decl. ¶ 5.) Defendant does not oppose Class Counsel's request. The Court finds that the costs requested were reasonably incurred, and GRANTS Plaintiff's request for costs in the amount of $15,352.54.

---

[2] Grover Fees Decl. ¶ 58, Exs. B-E; Decl. of Scot Bernstein, "Bernstein Decl.," Dkt. No. 41-3 ¶ 3, Ex. 2.

### E. Plaintiff's Request for an Incentive Award

Finally, Plaintiff moves for an incentive award and general release payment in the amount of $7,500. (Pl.'s Fee Mot. at 15.) "Incentive awards are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). The decision to approve such an award is a matter within the Court's discretion. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000). An incentive award is designed to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958-59. "[D]istrict courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives. ... [C]oncerns over potential conflicts may be especially pressing where, ... the proposed service fees greatly exceed the payments to absent class members." *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (internal citation and quotation marks omitted).

In wage and hour cases, many courts in this district have held that a $5,000 incentive award is "presumptively reasonable." *See, e.g., Harris v. Vector Mktg. Corp.*, No. 08-cv-05198 EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) (observing that "as a general matter, $5,000 is a reasonable amount"); *Smith v. Am. Greetings Corp.*, No. 14-CV-02577-JST, 2016 WL 362395, at *11 (N.D. Cal. Jan. 29, 2016) (awarding $5,000); *Odrick v. UnionBanCal Corp.*, No. C 10-5565 SBA, 2012 WL 6019495, at *7 (N.D. Cal. Dec. 3, 2012) (same). Incentive awards may also be especially appropriate in wage and hour class actions, where a named plaintiff undertakes "a significant 'reputational risk' in bringing [an] action against [plaintiff's] former employer." *Covillo v. Specialty's Café*, No. C-11-00594 DMR, 2014 WL 954516, at *8 (N.D. Cal. Mar. 6, 2014) (citing *Rodriguez*, 563 F.3d at 958-59).

Here, Plaintiff estimates that he spent 8.5 hours working with Class Counsel litigation this case, plus an unstated number of hours spent over the course of two mediation sessions. (Decl. of Frank Sica, "Sica Decl.," Dkt. No. 41-2 ¶¶ 4-12; Pl.'s Mot. at 3.) Plaintiff attests that he was concerned about the reputational risk and potential repercussions of bringing this litigation. (Sica Decl. ¶¶ 14-15.) Based on the record, the Court finds that Plaintiff is entitled to an incentive

10

award and general release payment, but that the presumptive award of $5,000.00 is more appropriate. First, any risk to Plaintiff's reputation is discounted, because he recently served as one of two class representatives in a similar case in this district. *See* Order Granting Final Approval, *Sica et al v. Construction & Turnaround Services, L.L.C.*, No. 21-cv-00188-JSW (N.D. Cal. Jan. 7, 2022), ECF No. 42. Second, Plaintiff likely spent a maximum of 30 hours on this litigation and did not undergo deposition. *See, e.g., Nucci v. Rite Aid Corp.*, No. 19-CV-01434-LB, 2022 WL 1693711, at *6 (N.D. Cal. May 26, 2022) ($7,500 incentive awards for each of three class representatives who collectively spent 155 hours on the case, including attending mediations and undergoing depositions.)[3]

Thus, the Court GRANTS IN PART AND DENIES IN PART the motion for incentive award and general release payment, and awards Plaintiff $5,000. The payment of the incentive award and general release payments shall be made in accordance with the terms of the Settlement Agreement.

## IV.   CONCLUSION

For the reasons set forth above, Plaintiff's motion for final approval of the class action settlement is GRANTED, and the Court (1) certifies the classes for settlement purposes only, (2) approves the settlement and authorizes the distribution of funds set forth above, (3) confirms the appointments of the class representative, class counsel, and Simpluris, Inc., (4) approves $195,000 in attorney's fees, $15,352.54 in costs, $9,000 for Simpluris, Inc.'s administration costs, $5,000 to Plaintiff Frank Sica as an incentive award, and (5) orders the parties and Simpluris, Inc. to carry out their obligations in the settlement agreement.

//
//
//
//
//

---

[3] The court declines to apply the adjustment for inflation proposed for the first time at the hearing by Plaintiff's counsel.

11

Finally, the Court retains jurisdiction over this action for the purposes of supervising the implementation, enforcement, construction, and interpretation of the Settlement Agreement, and distribution of the Class Settlement Amount. The Clerk shall close the case.

IT IS SO ORDERED.

Dated: August 10, 2022

*Kandis Westmore*
KANDIS A. WESTMORE
United States Magistrate Judge